PEOPLE ex rel. GUNSON v. ROOSEVELT et al.

(Supreme Court, Appellate Division, First Department. March 17, 1899.)

1. POLICE COMMISSIONERS—FINDINGS.
   Conclusion of the police commissioners on conflicting evidence, which would have supported it had it been a verdict of a jury, will not be disturbed.
2. POLICE—DISCHARGE.
   Policemen are properly discharged for arresting one, and taking him, bareheaded and without a coat, on a cold day, to the station, simply because they were provoked by their dispute with him, and his request that they move on and get away from the premises.

Certiorari, on the relation of Thomas J. Gunson, to review the action of Theodore Roosevelt and others, as police commissioners, in dismissing relator from the police force of the city of New York. Writ annulled.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, McLAUGHLIN, and INGRAHAM, JJ.

Louis J. Grant, for relator.
John Whalen, Corp. Counsel, for respondents.

RUMSEY, J. The relator was tried upon two charges,—the first, neglect of duty and being absent from his post while on patrol duty on the 3d of February, 1896, and in a basement, with his hat and coat off, drinking beer. The second charge was conduct unbecoming an officer, and the specification was that on the 3d of February, 1896, he entered the store of one Dowling and arrested him without cause, struck him, put handcuffs on him, needlessly exposed him to the

weather, and required him to go to the station house without coat or hat. The relator was tried on both these charges on the same day, and was found guilty of each, and dismissed from the force.   Upon the hearing, before the full board, after the testimony had been referred to them, there were produced on each side certain affidavits bearing upon the first charge; but, as the commissioners certified that they did not consider these affidavits, we shall not further refer to them.

As to the first charge, there was undoubtedly great conflict in the evidence.   But in view of the well-settled rule that, where there is a conflict of evidence, the conclusion of the police commissioners will not be reversed, unless the weight of the evidence against it is so great that, had it been a verdict of a jury, the court would set it aside as against the weight of evidence (People v. Martin, 5 App. Div. 217, 39 N. Y. Supp. 74), we are satisfied that the decision of the police board should stand.   But, as to the second charge, the evidence to sustain it was overwhelming, and any other conclusion than that reached by the board of police commissioners would have been a serious miscarriage of justice. The occurrence took place on a cold day in February. It was conceded that Dowling was arrested in front of, or in the doorway of, his own store, by two policemen, of whom the relator was one.   If the witnesses for the complainant can be believed, the man was sober, and he had been guilty of no conduct which warranted the action of the policemen, although it is plain that for some reason there had taken place between himself and the two policemen a very serious dispute.   In that dispute it is quite possible that Dowling used expressions which were exceedingly offensive to the two men.   It is claimed by the policemen that Dowling attempted to push one of them off the walk.   The evidence to the contrary is so overwhelming that it would be difficult to credit the story, even were it sworn to by disinterested witnesses; but nobody pretends to have seen anything of the kind, except the policemen, and we do not believe that any such thing took place.   It is said by the policemen that, after the dispute, Dowling went into his store, and came out with his hand in his hip pocket, in which there was a pistol, and that the arrest was made because he threatened to shoot the policemen.   This story is also contradicted by every disinterested bystander, of whom there were several.   It is not to be disputed that the policemen were loitering upon that corner, instead of patrolling their post.   There was no occasion for their doing so.   Dowling, according to their own story, asked them to go away from his store.   Although he may have used offensive expressions when he made that request, if the policemen had complied with it, and pursued their course on patrol, as it was their duty to do, there certainly could have been no trouble between themselves and Dowling.   But they did not see fit to do so.   They remained there without any reason, so far as we can discover; and, if the testimony of the bystanders is true,—and we believe that it is,—not only did they remain there, but they sought opportunities for a quarrel with this man, which they finally pushed to such an extent that, without any reason, he was thrown down, struck, handcuffed, and taken to the station house upon a cold February day, through the

snow that was then falling. At the time he was thus arrested he had on no hat, and a light serge coat, such as grocers sometimes wear in their store; and, although he requested to be permitted to get his hat and overcoat, he was not allowed to do so, but was taken a considerable distance, to the station house, thus insufficiently clad. The charge against him at the police station was that of felonious assault. As to his condition when he was arrested and when he reached the police station, there is some dispute. The two policemen say that he was intoxicated, and in this they are corroborated to some extent by other policemen who were in the police station. The bystanders say that he was sober. This is corroborated by the testimony of Capt. Creedon, who was at the station when the man was brought in, and who testifies that he appeared to be slightly under the influence of liquor, that he was greatly excited and somewhat nervous, that he protested against his arrest, and that, in the judgment of the captain, he was not intoxicated, but was upon the verge of delirium tremens. It appears that during the evening he was taken to the Harlem Hospital, at 120th street. The ambulance surgeon, who attended him at the station, and directed that he should be taken to the hospital, testifies that he saw no signs of drunkenness, that he smelled no odor of alcohol either on his person or from his breath, that he talked intelligently, and that he was a sick man when he found him, and upon the verge of delirium tremens; and it appears from the testimony of the surgeons that he was delirious the next day, and that he died on the 6th of February. Except as to what occurred just before his arrest, and as to his condition, the facts are substantially undisputed; and there can be no doubt that the arrest, when made, was accompanied with acts of violence which were entirely unnecessary, and the prisoner, during and after his arrest, was treated with great brutality. There were contusions upon his face and body which were the result of the blows inflicted upon him, and, even had there been some reasonable cause for his arrest, the manner in which it was conducted requires the gravest condemnation. But we are satisfied from the evidence that there was no substantial reason for his arrest, and that it was made simply because the policemen who made it had been provoked by their dispute with Dowling, and by his request that they should move on and get away from his premises. This request undoubtedly was an affront to their dignity, but it afforded no reason for making an aggravated assault upon him; and clearly there was no reason why they should pervert their authority as guardians of the public peace, to commit a grave breach of the peace, which we must believe was very largely the cause of the death of a citizen. The conduct of this relator, from beginning to end, was utterly without excuse; and the police board would have been guilty of grave dereliction of duty, had they not visited such conduct with a dismissal from the force, as they did. Not only is there no reason shown for the reversal of their action, but every reason appears why the action should have been precisely what it was.

The writ, therefore, is annulled, and the action of the police commissioners affirmed, with costs. All concur.